IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS TERRY a/k/a<br>MARCUS BENSON a/k/a<br>TORAIN BENSON,<br><br>   Plaintiff,<br><br>vs.<br><br>CORPORAL JEFFREY MILLS, et al.,<br><br>   Defendants. | ◊<br>◊<br>◊<br>◊<br>◊<br>◊<br>◊<br>◊<br>◊<br>◊<br>◊<br>◊<br>◊ | No. 14-1083-JDT-egb |

ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

  On April 7, 2014, Plaintiff Marcus Terry a/k/a Marcus Benson a/k/a Torian Benson, Tennessee Department of Correction prisoner number 22087, an inmate now confined at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § l983, along with a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On April 9, 2014, the Court entered an order granting leave to proceed *in forma pauperis* and assessing the filing fee. (ECF No. 3.) Plaintiff was previously confined at the Northwest Correctional Complex ("NWCX"). The Clerk shall record the defendants as Corporal Jeffrey Mills, Sergeant David Burkeen, Correctional Counselors Danny Ellison and Rhonda Chesser, Teacher Chris Birmingham, Corporal James Hyde, Unit Manager Jeff Bratton, and Captain Jerry Jones.

  Plaintiff alleges that all defendants conspired to deny him of due process and equal protection by illegally convicting him of the disciplinary of assault on another inmate, increasing his security classification level, and decertifying him for parole review. (ECF No. 1 at PageID 2.)

  Plaintiff alleges that Inmate Stephen Sheppard was released from protective custody onto Plaintiff's unit. (*Id.* at PageID 6-7.) Plaintiff alleges that Sheppard started an argument that ended

in an "altercation" with Plaintiff and another inmate. (*Id.* at PageID 7.) Inmate Sheppard sustained a black eye and was moved to another unit. (*Id.*) Plaintiff was taken to punitive segregation pending investigation. (*Id.*) On March 20, 2013, Plaintiff was taken to Defendant Chesser's office to be interviewed by Defendant Mills about the incident. (*Id.* at PageID 8.) Plaintiff contends that Mills told him that Sheppard said that Plaintiff and the other inmate attacked him and that the videotape supported Sheppard. (*Id.*) Plaintiff characterized the incident as a brief wrestling match and claimed the videotape should show Sheppard as the instigator. (*Id.*) Plaintiff alleges that Mills told him it did not look good with two black inmates beating up on a white inmate. (*Id.* at PageID 9.) Plaintiff was moved to the close security unit the next day. (*Id.*)

On March 26, 2013, a disciplinary charge was issued charging Plaintiff with assault. (*Id.*) On March 28, 2013, Defendant Chesser prepared a classification hearing notice and custody assignment form despite the lack of a disciplinary hearing and conviction. (*Id.* at PageID 10.) On April 4, 2013, Plaintiff pled not guilty at the disciplinary hearing before Burkeen, Ellison, and Birmingham, but was convicted of assault. (*Id.*) Plaintiff contends that he was not allowed to call witnesses, view the videotape, or challenge the veracity of the confidential informant. (*Id.* at PageID 10-12.) Plaintiff was sentenced to ten days in punitive segregation, to pay a five dollar ($5.00) fee, and to package restrictions for twelve months. (*Id.* at PageID 12.)

Plaintiff alleges that Defendant Chesser attempted to re-classify him to close custody status on April 10, 2013. (*Id.*) Plaintiff requested his forty-eight hour notice and hearing and refused to sign the form. (*Id.* at PageID 12-13.) On April 12, 2013, Defendant Bratton took Plaintiff to Defendant Chesser's office for reclassification. (*Id.* at PageID 13-14.) Plaintiff protested that he had not received his notice in writing. (*Id.* at PageID 14.) Defendant Bratton signed and dated the form, handed it to Plaintiff, and told Plaintiff he would be reclassified to close custody on April 15, 2013. (*Id.*) Plaintiff contends that his punitive segregation time expired on April 14, 2014; however, he was not permitted to return to general population. (*Id.*) Plaintiff contends that Defendant Bratton conspired with Defendant Jones to keep Plaintiff in punitive segregation until the

reclassification took effect.  (*Id.*)  Plaintiff believes that, if returned to general population, his assigned counselor would not have permitted him to be reclassified to close custody.  (*Id.* at PageID 16.)  On April 15, 2013, Plaintiff was reclassified as close custody as a result of the assault conviction.  (*Id.* at PageID 16-17.)  On April 22, 2013, Plaintiff appealed the reclassification.  (*Id.*)  Warden Steward denied Plaintiff's appeal.  (*Id.* at PageID 18.)

Plaintiff was decertified for his August 1, 2013, parole grant hearing as a result of his reclassification to close custody.  (*Id.*)  In November 2013, Plaintiff was taken off close custody but remains decertified for a parole grant hearing for one year.  (*Id.*)  Plaintiff contends that Defendants treated him more harshly than white inmates who have been involved in similar situations.  (*Id.* at PageID 19-21.)  Plaintiff seeks compensatory and punitive damages from Defendants.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original).  "[P]leadings that . . . are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see

3

how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. *See Neitzke* [*v. Williams*], 490 U.S. [319,] 325, 109 S. Ct. at 1827 [(1989)]. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted. *See id.* at 328-29, 109 S. Ct. 1827." *Hill*, 630 F.3d at 470.

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. As the Sixth Circuit has explained:

> Before the recent onslaught of *pro se* prisoner suits, the Supreme Court suggested that *pro se* complaints are to be held to a less stringent standard than formal pleadings drafted by lawyers *See Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam). Neither that Court nor other courts, however, have been willing to abrogate basic pleading essentials in *pro se* suits. *See, e.g., id.* at 521, 92 S. Ct. at 596 (holding petitioner to standards of *Conley v. Gibson*); *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.) (duty to be less stringent with *pro se* complaint does not require court to conjure up unplead allegations), *cert. denied*, 464 U.S. 986, 104 S. Ct. 434, 78 L. Ed. 2d 3366 (1983); *McDonald v. Hall*, 610 F.2d 16 (1st Cir.1979) (same); *Jarrell v. Tisch*, 656 F. Supp. 237 (D.D.C. 1987) (*pro se* plaintiffs should plead with requisite specificity so as to give defendants notice); *Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981) (even *pro se* litigants must meet some minimum standards).

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to

4

comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants.").

The Sixth Circuit has held that § 1983 is the exclusive means by which litigants may sue state officials for violations of their constitutional rights. *Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987) ("[W]e conclude that it is unnecessary and needlessly redundant to imply a cause of action arising directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have vindicated her constitutional rights."), *vacated on other grounds*, 488 U.S. 1036 (1989). The Court therefore CONSTRUES Plaintiff's due process and equal protection claims as arising under 42 U.S.C. § 1983.

To state a claim under 42 U.S.C. § 1983,[1] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652,

---

[1]Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

656 (6th Cir. 1993). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to punitive segregation, the loss of package privileges, fines, and restitution do not constitute an atypical and significant hardship in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Alleged violations of TDOC policy are not actionable under 1983. See Storm v. Swiger, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).

Plaintiff's duration of confinement was affected by his conviction; therefore he may not challenge it with a § 1983 action. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended *Heck* to bar § 1983 actions that do not directly challenge confinement, but instead challenge procedures which necessarily imply unlawful confinement. *Id.* at 646. A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. *Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000), overruled in part by *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (*Heck* does not apply if the prisoner's lawsuit does not threaten any consequence for the plaintiff's conviction or the duration of his sentence). Plaintiff may not invoke § 1983 to challenge the disciplinary conviction until the conviction is overturned.

Tennessee law provides for judicial review of prison disciplinary proceedings.[2] *See* Tenn. Code Ann. §§ 27-8-101, 102; *Bishop v. Conley*, 894 S.W.2d 294, 296 (Tenn. Crim. App. 1994). After exhausting state court remedies, a prisoner may seek federal habeas relief to restore good-time

---

[2]The proper vehicle for challenging a disciplinary action is a petition for a common law writ of certiorari, and the petition must be filed within sixty (60) days of the challenged action. *Rhoden v. State Dep't of Corr.*, citing Bishop v. Conley, 894 S.W.2d 294 (Tenn. Crim. App. 1994).

6

credits. *See Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973). Plaintiff fails to allege any attempts to exhaust his state court remedies.

A prisoner who succeeds in overturning his disciplinary conviction can bring a § 1983 due process claim. *See Edwards*, 520 U.S. at 648. *See also Schilling v. White*, 58 F.3d 1081, 1087 (6th Cir. 1995) ("Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.").

Plaintiff's claims arising from a conviction that has not been invalidated are not presently cognizable. He fails to state a claim upon which relief may granted. *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004)(a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003)(same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003)(same).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951, (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does

7

not infringe the right of access to the courts."). The deficiencies in Plaintiff's complaint cannot be cured by amendment until his disciplinary conviction is invalidated, and he fails to state a claim upon which relief may be granted.

Therefore, the Court DISMISSES the claims arising from Plaintiff's disciplinary conviction pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Judgment shall be entered for all Defendants.

The Court must also consider whether Plaintiff should be allowed to appeal this decision *in forma* pauperis, should he seek to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed *in forma pauperis*, whether the appeal would be frivolous. Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. *Id.* at 445-46. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal *in forma pauperis*.

In *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and 28 U.S.C. § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the second dismissal of one of his cases as frivolous or for failure to state a claim.[3] This "strike" shall take effect on entry of judgment. See Coleman v. Tollefson, 733 F.3d 175, 177-78 (6th Cir. 2013).

IT IS SO ORDERED.

    s/James D. Todd
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[3]*See Terry a/k/a Benson v. Cooper*, No. 14-2047-JDT-egb (W.D. Tenn. Nov. 12, 2014), a § 1983 dismissed for failure to state a claim and as seeking relief from defendants immune from suit pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(II) and (iii) and 1915A(b)(1) and (2).